# 22-75

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

EMILEE CARPENTER, LLC d/b/a Emilee Carpenter Photography and

EMILEE CARPENTER

*Plaintiffs -Appellants,*

vs.

LETITIA JAMES, in her official capacity as Attorney General of New York;
MARIA L. IMPERIAL, in her official capacity as Acting Commissioner of the New York Divisions of Human Rights; and
WEEDEN WETMORE, in his official capacity of District Attorney of Chemung County

*Defendants-Appellees.*

---

On Appeal from the United States District Court for the Western District of New York, Case No. 6:21-cv-06303

---

### OPENING BRIEF OF APPELLEE, WEEDEN WETMORE

---

M. Hyder Hussain, Esq.
County of Chemung Department of Law
Attorneys for Respondent, Weeden Wetmore,
District Attorney of Chemung County
167 Lake Street
Elmira, New York 14902
Phone: 607-737-2982
Email: hhussain@chemungcountyny.gov

# **TABLE OF CONTENTS**

**Page**

Table of Authorities..................................................................................ii

Summary of the Argument ........................................................................... 1

Argument ...................................................................................................... 3

    I. New York has a compelling interest in eradicating discrimination of all kinds ................................................................................................... 3

        A. Persons providing Accommodations may not discriminate ...................... 4

        B. Denial/Unwelcome Clauses are not unconstitutional ............................. 5

        C. Free exercise Clause satisfied by neutrality of general applicability ....... 6

        D. Establishment Clause Inapplicable .......................................................... 8

    II. New York's Laws are the least restrictive means to further its compelling interest in eradicating discrimination of all kinds............................................ 8

Conclusion .................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Page**

**Federal Court:**

*303 Creative LLC v. Elenis*, 6 F.4th 1160 (10 Cir. 2021)..............................3

*Bell v. Maryland*, 378 U.S. 226 (1964) .................................................. 1

*Boy Scouts of America v. Wyman,* 335 F.3d 80 (U.S.C.A., 2nd Cir., 2003) .............. 3

*Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 250 (1964)................. 5

Heckler v. Mathews, 465 U.S. 728, 739 (1984)......................................... 6

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rts. Comm'n*, 138 S. Ct. 1719, 1723, 1727, 1728-29 (2018).................................................................. 1, 4, 6, 7, 8

*Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968) ...................... 7

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 389 [1973] ............................................................................ 4

*R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 387-88 (1992) ............................ 4

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 800 (1988)................ 8

*Roberts v. U.S. Jaycees, 468 U.S. 609 (1984)*............................................. 3

*Telescope Media Grp. v. Lucero*, 936 F.3d 740 (8th Cir. 2019)............................. 5

*United States v. Burke*, 504 U.S. 229, 238 (1992) ....................................... 8

**Court of Appeals:**

*Gibbs v. Arras Bros.*, 222 N.Y. 332, 336 (1918) ......................................... 1

**Supreme Court:**

*Messenger v. State*, 41 N.W. 638, 639 (Neb. 1889).................................... 7

*State v. Arlene's Flowers, Inc.*, 193 Wash.2d 469, 491 (2019) ..........................6-7

*Swanner v. Anchorage Equal Rights Comm'n*, 874 P.2d 274, 282, 283 (Alaska 1994) .................................................................................................................. 5, 9

**Statute:**

42 U.S.C. § 3604(c) ............................................................................................. 4

## SUMMARY OF THE ARGUMENT

New York has a compelling interest in eradicating discrimination of all kinds, and indeed, the laws of our nation agree this goal is just and proper.

The lower court properly noted that: "Since the end of the Civil War, States and localities have enacted and expanded legislation to ensure that historically underserved, disfavored, or disadvantaged classes of persons have the same access to the American marketplace's great bounty as afforded to the public at large. Without such access, private discrimination in the marketplace could 'perpetuate a caste system in the United States,' *Bell v. Maryland*, 378 U.S. 226, 288 (1964)(Goldberg, J., concurring), preventing certain groups from 'achieving prosperity, health, development or happiness.' *Gibbs v. Arras Bros.*, 222 N.Y. 332, 336 (1918). The Supreme Court has repeatedly and unequivocally found that such legislative efforts serve valid, and indeed compelling, interests, including in the context of sexual orientation discrimination. At bottom, these laws simply seek to guarantee that businesses purporting to serve the public truly do serve the public. '[G]ay persons and gay couples' are a part of that public. *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rts. Comm'n*, 138 S. Ct. 1719, 1727 (2018). Therefore they, like all other members of the public in the marketplace, are entitled to be treated in a manner consistent with their inherent equality, "dignity[,] and worth.' *Id.* "[1]

---

[1] SA 1, pg. 2

1

However, Plaintiffs'-Appellants' cite the First Amendment as a sword and shield, seeking to find legal standing to refuse to "… 'participate in a ceremony or express a message [through her photography] that violates her religious beliefs.' ECF No. 1 ¶¶130, 136."[2] Plaintiffs-Appellants have admitted refusing to respond whatsoever to seven requests for same-sex weddings, and therefore are "… presently refusing to provide photography services for same-sex weddings, and she intends to continue that policy, ECF No. 1 ¶¶ 123, 242, 266, 267…"[3] In addition, for example, Plaintiffs-Appellants would like to amend their LLC's operating agreement to prohibit it from providing wedding photography services to same-sex couples, and explicitly advertise such restrictions in all aspects of her business.[4]

The undersigned does not contest the lower court's ruling that Plaintiffs'-Appellants' have standing to bring this lawsuit.[5] However, we agree that this Court should uphold the lower court's ruling, dismissing the Plaintiffs-Appellants' claims, with prejudice, as well as their denial of a preliminary injunction and a denial of their leave to amend.

---

[2] SA 1, pg. 6
[3] SA 1, pgs. 7-8, 13-14
[4] SA 1, pgs. 7-8. 14
[5] SA 1, pgs. 10-18

2

## ARGUMENT

### I. New York has a compelling interest in eradicating discrimination of all kinds

The lower court properly held that: "… New York has a compelling interest in ensuring that individuals without regard to sexual orientation, have, "equal access to publicly available goods and services. *Roberts*, 469 U.S. at 624; *Elenis*, 6 F.4th at 1179."[6] The lower court details legislative enactments within New York in particular which sought to address "… the societal ills associated with race discrimination."[7] As this very Court stated in *Boy Scouts of America v. Wyman*: "A law that penalizes race-based discrimination in membership or employment will almost inevitably have a particularly adverse impact on the expression of doctrines like that of racial superiority to the extent that these doctrines are sought to be stated and spread through membership or employment practices. Similarly, and for the same reason, Connecticut's Gay Rights Law has a foreseeably adverse impact on the expressive abilities of organizations that seek through their membership and employment policies to voice their view that homosexuality is immoral." *Id.*,335 F.3d 80, 93 (U.S.C.A., 2nd Cir., 2003).

---

[6] SA1, page 24, citing: *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) and *303 Creative LLC v. Elenis*, 6 F.4th 1160 (10 Cir. 2021).

[7] SA1, page 24, see also, pages 23-35

3

### A. Persons providing Accommodations may not discriminate

Just as anti-racial discrimination laws have been codified and upheld, preventing employers and persons providing public accommodations from discriminating based on race (see, e.g., 42 U.S.C. § 3604(c); *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 389 [1973]), the Supreme Court has, too, explicitly disapproved of businesses posting signs saying "no goods or services will be sold if they will be used for gay marriages," as they would "impose a serious stigma on gay persons." *Masterpiece Cakeshop v. Colorado Civil Rights Comm'n, supra* at 1728-29. Respectfully, the Free Speech Clause does not authorize the Plaintiffs-Appellants to discriminate based on sexual orientation, nor would it permit Plaintiffs-Appellants to amend their LLC's operating agreement to prohibit it from providing wedding photography services to same-sex couples, nor would it allow Plaintiffs-Appellants to explicitly advertise such a restriction of her intended clientele.

It is submitted that the challenged laws in this case merely regulates non-expressive conduct, and does not in any way target or regulate speech or expression, nor discriminate against viewpoints. See, *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 387-88 (1992).

4

## B. Denial / Unwelcome Clauses are not unconstitutional

The lower court properly held that: "Plaintiff's free-speech challenge to the Denial and Unwelcome clauses does not require significant analysis."[8] As noted, the Supreme Court has held that: "[a]ny First Amendment interest which might be served by advertising an ordinary commercial proposal and which might arguably outweigh the governmental interest supporting the regulation is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity."[9]

The harm of being refused service because of one's identity is not erased just because a customer might be able to obtain goods elsewhere. See, *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 250 (1964). "The government views acts of discrimination as independent social evils even if the prospective [customers] ultimately find" the goods or services they sought. *Swanner v. Anchorage Equal Rights Comm'n*, 874 P.2d 274, 283 (Alaska 1994). "The argument that victims of discrimination are free to go elsewhere carries little force. Antidiscrimination laws ... were passed to guarantee equal access to all goods and services otherwise available to the public." *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 777 (8th Cir. 2019) (Kelly, J., concurring in part and dissenting in part). See also *Heckler v.*

---

[8] SA1, page 35-36
[9] SA1, page 36, citing *Pittsburgh Press, supra* at 389.

5

*Mathews*, 465 U.S. 728, 739 (1984) ("[D]iscrimination itself ... can cause serious non-economic injuries.");

### C. Free exercise Clause satisfied by neutrality of general applicability

The lower court properly held that: "Plaintiff has failed to plausibly allege that New York's public accommodation laws are either not neutral or not generally applicable. As a result, rational basis, not strict scrutiny, applies."[10] It is agreed that Plaintiffs-Appellants' argument centers around the allegation that New York's public accommodation laws are not generally applicable.[11] However, respectfully, there is no indication that the challenged laws would not be (or could not be) applied neutrally to Plaintiffs-Appellants. The claimed religious and /or otherwise moral objections to the marriages of same-sex couples cannot permit Plaintiffs-Appellants "to deny protected persons equal access to goods and services under a neutral and generally applicable public accommodations law." *Masterpiece Cakeshop v. Colorado Civil Rights Comm'n*, supra at 1727. Granting such an exemption, even for sincere religious objections, would severely undermine the Laws' purpose of protecting equal opportunity to participate in the marketplace. *Id.* It is submitted that Plaintiffs-Appellants' claim that the challenged laws interfere with their free exercise of religion, is "patently frivolous." *State v. Arlene's Flowers, Inc.*, 193

---

[10] SA1, page 42

[11] SA1, page 39

6

Wash.2d 469, 491 (2019) citing: *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968) [*internal quotation marks omitted*].

As a final matter, even if this Court were convinced that strict scrutiny should be applied to this instance, it is submitted that the challenged laws would still be constitutional. The challenged laws advance New York's compelling interest in eradicating discrimination, and are the least restrictive means of achieving that goal. In *Masterpiece Cakeshop*, "Petitioners conceded ... that if a baker refused to sell any goods or any cakes for gay weddings, ... the State would have a strong case under [the Supreme] Court's precedents that this would be a denial of goods and services that went beyond any protected rights of a baker who offers goods and services to the general public and is subject to a neutrally applied and generally applicable public accommodations law." *Id.,* at 1728. Likewise, here, the Plaintiffs-Appellants' desire and intention to refuse to offer her services to persons desiring a same-sex wedding photographer go beyond protected rights of any similarly positioned photographer, offering their services to the general public, and is subject to a neutrally applied and generally applicable public accommodations law.

A barber opening a shop to the public cannot say "You are a slave, or a son of a slave; therefore I will not shave you." *Messenger v. State*, 41 N.W. 638, 639 (Neb. 1889) (internal quotation marks omitted). Likewise, the Plaintiff-Appellants should not be allowed to say: "You are homosexual; therefore I will not photograph you."

7

### D. Establishment Clause Inapplicable

The lower court properly held that: "… the law would not compel Plaintiff to participate in any religious exercises at same-sex weddings just because she chooses to actively and religiously participate in them when she photographs opposite-sex weddings."[12] The Court in *Masterpiece Cakeshop* also anticipated and rejected the argument that its reasoning applies beyond clergy: to hold that commercial services qualify as participation in the ceremony would raise a host of issues "that seem all but endless." *Id.* at 1723.

### II. New York's Laws are the least restrictive means to further its compelling interest in eradicating discrimination of all kinds

New York's laws seek to ensure equal treatment and to prohibit discrimination, and respectfully are "precisely tailored" to achieve those compelling interests. See *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 800 (1988). The Supreme Court has held that instances of discrimination "causes grave harm to its victims." *United States v. Burke*, 504 U.S. 229, 238 (1992). It has further been stated that there is simply no "numerical cutoff below which the harm is insignificant." *Swanner v. Anchorage Equal Rights Comm'n*, 874 P.2d 274, 282 (Alaska 1994).

---

[12] SA1, page 43

8

## CONCLUSION

New York's laws which are challenged by this action are narrowly tailored to serve a compelling interest in eradicating discrimination in the commercial market. As stated herein, these laws would withstand even a strict scrutiny standard of review, and certainly withstand the rational basis standard. Accordingly, the lower court properly denied the Plaintiffs'-Appellants' motion for a preliminary injunction, properly granted the motions to dismiss by Defendants-Appellees, and further properly denied the motion to amend the complaint.

Dated: Elmira, New York
April 8, 2022

Respectfully submitted,

/s/ M. Hyder Hussain

M. Hyder Hussain, Esq.
County Attorney, County of Chemung
Counsel for Appellee, Wetmore
167 Lake St.
Elmira, New York 14902
Telephone: (607) 737-2982
Facsimile: (607) 737-0351

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2022, this brief was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Second Circuit through the Court's CM/ECF system. I certify that all participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Respectfully submitted,

/s/ M. Hyder Hussain

M. Hyder Hussain, Esq.
County Attorney, County of Chemung
Counsel for Appellee, Wetmore
167 Lake St.
Elmira, New York 14902
Telephone: (607) 737-2982
Facsimile: (607) 737-0351

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Local Rule 32.1(a)(4)(B) because, excluding the portions exempted by Fed. R. App. R. 32(f), this brief contains 1814 words.

This brief also complies with the typeface requirements of Fed. R. App. R. 32(a)(5) and the type-style requirements of Fed. R. App. R. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font with italicized case names.

Respectfully submitted,

\_\_\_\_/s/ M. Hyder Hussain_____

M. Hyder Hussain, Esq.
County Attorney, County of Chemung
167 Lake St.
Elmira, New York 14902
Telephone: (607) 737-2982
Facsimile: (607) 737-0351

11