

July 14, 2023

**<u>VIA CM/ECF</u>**

Ms. Catherine O'Hagan Wolfe
Clerk, Second Circuit Court of Appeals
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

> **Re: Supplemental Letter Brief on *303 Creative LLC v. Elenis* in Response to Court's October 3, 2022 Order *Emilee Carpenter, LLC v. James*, Docket No. 22-75**

Dear Ms. O'Hagan Wolfe:

The Supreme Court's decision in *303 Creative LLC v. Elenis*, No. 21-476, 2023 WL 4277208 (U.S. June 30, 2023), resolves this appeal. It leaves no doubt that Emilee Carpenter pled plausible free-speech and expressive-association claims. In fact, the decision proves that Emilee deserves injunctive relief for her free-speech claim now.

The district court and New York recognized the relevance of *303 Creative*. The district court relied on the Tenth Circuit's now-reversed *303 Creative* opinion throughout its order. SA.14, 18, 23–24, 31, 34. New York and the County claimed that *303 Creative* and Emilee's case present

1

"largely identical issues." NY.Mot.2, ECF No. 39. They're correct: those similarities resolve her case.

New York's laws violate the First Amendment (just like Colorado's public-accommodations law did as to the plaintiff in *303 Creative*) by (a) compelling Emilee to create original content celebrating a view of marriage she does not believe and (b) banning her from explaining that choice. The laws also infringe on Emilee's expressive association. Under *303 Creative*, the laws are per se unconstitutional as applied to Emilee, or, at least, fail strict scrutiny. Emilee also deserves a preliminary injunction because *303 Creative* proves that she will likely succeed on her free-speech claim and meets the other injunction factors. This Court should reinstate Emilee's free-speech and expressive-association claims and direct the district court to enter a preliminary injunction as to Carpenter's free-speech claim.[1]

## I.   *303 Creative* dictates the outcome here.

*303 Creative* and Emilee's case involve almost identical laws, facts, issues, and arguments. Start with the laws. Colorado's and New York's laws define public accommodations similarly and broadly. *See* Appendix to this Letter. Both laws include like clauses. *Id.* And both governments

---

[1] *303 Creative* leaves unresolved Carpenter's free-exercise, establishment, and due-process claims. But Carpenter plausibly alleged those claims. Emilee.Br.23–43. This Court should reverse the district court's order dismissing them at this motion-to-dismiss stage.

defended using these laws to (a) compel artists to create original content that violates their beliefs and (b) silence artists' speech about marriage.

On to the facts. Lorie Smith owns 303 Creative and is an artist, like Emilee, who uses images and words. *303 Creative*, 2023 WL 4277208, at *4. Like Emilee, Smith hoped to create custom expression—in her case websites—celebrating weddings consistent with her religious beliefs and to post a statement explaining her reasons for this choice. *Id.* at *4–5. And, like Emilee, Smith challenged a public-accommodations law before enforcement because she faced a credible threat that Colorado would punish her for designing custom artwork in line with her beliefs. *Id.*

Colorado put Smith in a dilemma: "If she wishes to speak, she must either speak as the State demands or face sanctions for expressing her own beliefs." *Id.* at *9. Following 80 years of precedent, the Supreme Court held that this choice "represent[ed] an impermissible abridgment of the First Amendment's right to speak freely." *Id.* at *9. New York's laws impose the same burdens on Emilee's speech and violates her freedom of speech in precisely the same way.[2]

---

[2] New York may invoke Colorado's stipulations as a difference between Smith's and Emilee's cases. It's not. For the motion to dismiss, the facts are construed in Emilee's favor. For Emilee's preliminary injunction motion, New York never objected to any evidence, no party disputes a material fact, and those facts overlap with and exceed the *303 Creative* stipulations.

**II. Under *303 Creative*, New York's Accommodations and Discrimination Clauses violate the First Amendment by forcing Emilee to express a message she does not believe.**

The *303 Creative* Court followed the framework outlined in *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995), to conclude that Colorado compelled Smith's speech. *Hurley* held that a compelled-speech claim has three elements. Emilee.Br.23–24 (describing test). *303 Creative* tracks this test but collapses the last two elements together. First, the Court held that Colorado's law regulated Smith's customized websites—her speech. *303 Creative*, 2023 WL 4277208, at *9, *11. Second, Colorado's law altered the expressive content of Smith's speech by forcing her to express a message she did not believe. *Id*. at *13, *15. This test is workable and allows the First Amendment and public-accommodations laws to peacefully co-exist. Emilee meets that test here.

**A. Emilee's photographs and blogs are pure speech.**

Some expression qualifies as "pure speech"—"pictures, films, paintings, drawings, and engravings, [and] oral utterance and the printed word." *Id*. at *8 (cleaned up). In *303 Creative*, Smith's websites fell within this presumption because they contain "images, words, symbols, and other modes of expression." *Id*. She designed each website as an "original, customized" creation, and each website "communicate[s] ideas" about what she "understands to be a true marriage." *Id*.

4

Emilee's photographs and blogs likewise qualify as pure speech. After all, in *303 Creative*'s words, photographs are "pictures," and blogs are "the printed word." *Id.* at *8. Just like Smith, Emilee creates photographs and writes each blog as an original expression of her view on marriage. Emilee.Br.6–9, 24–25. Her photographs and blogs tell stories celebrating her beliefs about marriage. JA.27–34, 102–111.

New York suggests that Emilee's photographs and blogs are not speech because she creates them for money as part of her business. NY.Br.28, 34; Cnty.Br.7. At most, New York says Emilee's works are *her client's* speech. NY.Br.30–31. But the Supreme Court rejected both arguments in *303 Creative*. It held the First Amendment protects "those who seek profit" including "artists." *303 Creative*, 2023 WL 4277208, at *15. Smith's websites were also her speech even though she worked with clients. *Id.* at *9. The same is true of Emilee. Emilee.Reply.Br.7–9.

## B. New York's laws alter Emilee's speech.

The Supreme Court next concluded that Colorado's law threatened to alter Smith's desired message. If she "offers wedding websites celebrating marriages she endorses, the State intends to force her to create custom websites celebrating other marriage she does not." *303 Creative*, 2023 WL 4277208, at *9. New York's laws do the same by forcing Emilee to create photographs and blogs promoting a view of

5

marriage different from the view she wants to celebrate. Emilee.Br.25–31. Under *303 Creative*, that's compelled speech. It's really that simple.

New York resists this conclusion by distorting why Emilee declines to express certain views. To New York, Emilee's decision to decline to create certain content is "inextricably tied to [the] sexual orientation" of the client requesting that content. NY.Br.49. New York concludes that Emilee's objection hinges on the client's status, not the message.

Not so. Emilee evaluates each request based on the message requested. JA.36–38, 122–25. She won't create content that violates her beliefs *for anyone. Id.* But if she's asked to create content that aligns with her beliefs, she'll do so no matter who asks. Emilee.Br.9, 30. The Supreme Court approved of this "status" and "message" distinction. *303 Creative*, 2023 WL 4277208, at *12 n.3. New York does too—just not for Emilee. Oral Arg. Audio at 25:38–25:4, https://perma.cc/RZM2-9U5W ("If you wouldn't create a message for anyone, then you don't have to create a message for someone with a protected status.").

In other places, *303 Creative* reads like a line-by-line rebuttal of New York's and the County's briefs. Consider the following.

| New York's & County's Claims | Supreme Court's Response |
|---|---|
| The law doesn't affect Emilee's speech because it doesn't "dictate what message" Emilee speaks or "the content of her photography." NY.Br.30, 34. | Colorado's law compelled speech because if Smith created "websites celebrating marriages she endorses," it forced her to create websites celebrating a |

6

|  | view "she does not." *303 Creative*, 2023 WL 4277208, at *9, *13. |
|---|---|
| The law regulates Emilee's conduct. NY.Br.17, 22, 26, 39; Cnty.Br.4. | Colorado's law regulated speech when the state applied it to Smith's "expressive activities" and then sought to "compel" that expression. *Id.* at *13. |
| The law imposes an "incidental" effect on Emilee's speech. NY.Br.17, 26. | There was nothing "incidental" about Colorado's interference with Smith's speech. *Id.* at *11. |
| Opposite-sex and same-sex photographs and blogs are similar products. NY.Br.30–31. | The "same product" test doesn't apply to custom expression. *Id.* |
| *Hurley*, *West Virginia Board of Education v. Barnette*, 319 U. S. 624 (1943), and *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000) are distinguishable. NY.Br.29, 40, 51 n.8. | These cases control. *Id.* at *7–11, *13–16. |
| Cases involving school class-rooms, non-expressive associations, restaurants, hotels, and law firms apply. NY.Br.22, 28, 40–41, 43, 45–46, 53, 55–56; Cnty.Br.3, 5. | "[C]ontext matters" and these cases don't govern "when a law is used to force individuals to toe the government's preferred line when speaking." *Id.* at *14 n.6; *id.* at *13. |

The Supreme Court's systematic, brick-by-brick dismantling of New York's and the County's arguments reveal that they are fatally flawed. Many apply their public-accommodations laws harmoniously with the First Amendment. Neb.Br.5–26. New York must do the same.

### C. Emilee's lines are workable; New York's destroy free speech.

Channeling *Hurley*, *303 Creative* provides workable boundaries for determining when public-accommodation laws compel speech. Emilee.Br.23–31; Emilee.Reply.Br.11–13. But New York's and the County's tests run roughshod over the First Amendment.

Under *303 Creative*, there must first be speech. *Supra* § I.A. New York complains this creates "line-drawing problems" between speech and conduct, NY.Br.50, but courts regularly draw this line. This Court surely does.[3] Regardless, Emilee's photographs and blogs clearly qualify as speech. Next, the speech must be custom created, not pre-made. *303 Creative*, 2023 WL 4277208, at *8, *11. Last, the law must apply to alter the speaker's message. *Supra* § I.B. The speaker's stated objections, the requested speech's facial content, its context, and whether the speaker otherwise serves the protected class are all relevant to that inquiry. *303 Creative*, 2023 WL 4277208, at *8–9, *12, *15.

As to the last point, courts can ferret out pretextual declines from legitimate, message-based objections. Courts evaluate pretext every day. That's not an issue here. It's undisputed that Emilee always decides what to create based on the message requested, not the person requesting it.

---

[3] *Bery v. City of New York*, 97 F.3d 689, 696 (2d Cir. 1996) (stating "photographs" and "prints" presumptively qualify as speech because they "always communicate some idea"); *Mastrovincenzo v. City of New York*, 435 F.3d 78, 96 (2d Cir. 2006) (applying the "predominantly expressive purpose" test to items that do not meet *Bery* presumption).

8

This test gives plenty of space for New York to apply its law to "innumerable goods and services." *Id*. And New York may continue to prohibit "status-based discrimination unrelated to expression." *Id*. at *12 n.3. But New York cannot compel speech.

Yet, that's exactly what New York's laws do. New York admitted at oral argument that Emilee must write blog posts celebrating same-sex weddings, and then post them on her website, if she does so for opposite-sex weddings. Oral Arg. Audio at 26:54–28:46. There's no end to that sweeping authority, especially where New York admits that it "broadly" defines public accommodations and claims exceptional authority to regulate "artistic service[s]." NY.Br.5, 46. "[T]he First Amendment tolerates none of that." *303 Creative*, 2023 WL 4277208, at *9.

## III. Under *303 Creative*, the Accommodations, Discrimination, and Publication Clauses are intertwined, resolving Emilee's challenge to the latter.

The Supreme Court's decision also resolves Emilee's challenge to the Publication Provision. Like Colorado in *303 Creative*, the district court, New York, and the County "concede[d] that [the] authority to apply the" Publication Clause to Emilee "stands or falls with [the] authority to apply the" Accommodations and Discrimination Clauses to her. *303 Creative*, 2023 WL 4277208, at *5 n.1; SA.35–36; NY.Br.36–37; Cnty.Br.5. The Accommodations and Discrimination Clauses cannot dictate the content of Emilee's expression. *Supra* § II. Thus, neither they

9

nor the Publication Clause can prohibit Emilee from explaining her reasons for only creating certain content. *303 Creative*, 2023 WL 4277208, at *5 n.1; Emilee.Br.35; Emilee.Reply.Br.15–16.

This logic does *not* authorize businesses to post signs turning away an entire class of people, as New York wrongly suggests. NY.Br.36–37; Cnty.Br.4. That's "[p]ure fiction." *303 Creative*, 2023 WL 4277208, at *14. As *303 Creative* confirms, while the Denial Clause of New York's Publication Clause cannot prohibit artists from explaining what content they will and will not create, the clause can prohibit "non-expressive business[es]" from posting statements declining to serve groups of people. *Id.* at *14 n.5.

That also proves the Publication Clause's Unwelcome Clause is overbroad and unnecessary. New York could not articulate a statement the Unwelcome Clause covers that's not already prohibited by the Denial Clause. Oral Arg. Audio at 30:43–33:44. New York's own employment and housing laws do not even include an Unwelcome Clause equivalent, *see* N.Y. Exec. Law §§ 296(1)(d), (5)(b)(3), (5)(c)(2), yet New York still stops employment and housing discrimination without it. That New York can fulfill its interests in these areas without an Unwelcome Clause shows that this clause is facially overbroad as to public accommodations. Emilee.Br.59–60.

10

## IV.  Under *303 Creative*, Emilee plausibly alleged an expressive-association claim.

The district court "assume[d]" that New York's laws "interfere[]" with" Emilee's "right to expressive association" because the laws "operate[] to compel [her] to speak" messages she does not believe. SA.23. But there's no reason to assume because that conclusion is correct. Emilee.Br.36–37; Emilee.Reply.Br.17. The Supreme Court in *303 Creative* reiterated that the right to expressive association includes organizations' freedom "not to propound a point of view contrary to its beliefs." 2023 WL 4277208, at *8 (quoting *Dale*, 530 U.S. at 654).

New York disagrees. In its view, the freedom of expressive association doesn't apply to Emilee because she operates a for-profit photography studio. NY.Br.54–56. But *303 Creative* held that the First Amendment applies to those who "offer[]" … speech for pay" including companies with a "sole member-owner." 2023 WL 4277208, at *12. That describes Emilee and supports her expressive-association claim.

Applying these principles won't lead to the outcomes New York hypothesizes. *Contra* NY.Br.54–56. As in the free-speech context, courts have already developed an expressive-association framework that separates the free-expression wheat from the discriminatory chaff. *See Dale*, 530 U.S. at 648–60; *Slattery v. Hochul*, 61 F.4th 278, 287 (2d Cir. 2023) (explaining *Dale*'s three-part test). This claim should proceed.

11

**V.  Under *303 Creative*, New York's effort to compel Emilee's speech violates the First Amendment per se or, at the very least, fails strict scrutiny.**

New York's law violates Emilee's freedom of speech and expressive association by compelling her to create and associate with content that violates her beliefs. No further analysis is needed. The laws fail as applied. At the very least, *303 Creative* confirms that the laws cannot pass strict scrutiny here and certainly not at the motion-to-dismiss stage.

The Supreme Court adopted a per se rule against public-accommodations laws compelling ideological expression. These laws are not "immune" from the First Amendment when they "compel speech." *303 Creative*, 2023 WL 4277208, at *11. And when public-accommodations laws and the First Amendment "collide," there's "no question" that the First Amendment "must prevail." *Id.* Full stop.

In reaching that conclusion, *303 Creative* relied on *Hurley* and *Dale*. *Id.* The district court here discounted *Hurley* and *Dale*, saying they did not involve "commercial" entities. SA.27–32. But *303 Creative* rejected that artificial distinction. So the same free-speech principles that protect parades and expressive organizations protect Emilee too.

*303 Creative* debunks New York's interests in compelling Emilee's speech and association under a strict scrutiny analysis, too. New York mentions three interests: (1) ending discrimination; (2) ensuring equal access; and (3) stopping dignitary harms. NY.Br.40–42; Cnty.Br.5–6.

First, the Supreme Court confirmed the difference between "status-based discrimination (forbidden)" and "the right of a speaker to control his own message (protected)." *303 Creative*, 2023 WL 4277208, at *12 n.3. Emilee's decisions about what to create fall in the latter category. *Supra* § II. For that reason, New York has no interest in dictating Emilee's expression. *303 Creative*, 2023 WL 4277208, at *12.

Second, the government cannot justify an equal-access interest by intruding on a *particular* artist's unique expression. *Id.* at *11. Otherwise, "the better the artist … the more easily his voice could be conscripted to disseminate the government's preferred message." *Id.* New York argues that requiring equal access "is particularly apt for an artistic service like" Emilee's. NY.Br.46. The district court agreed. It held that New York could compel Emilee's speech because her photographs and blogs are "nonfungible" and "unique artistic" expression. SA.34. Drawing on *Hurley* and *Dale* again, the Supreme Court rejected the monopoly-of-one argument. That argument, it said, "would not respect the First Amendment; more nearly, it would spell its demise." *303 Creative*, 2023 WL 4277208, at *11. *See also* Publishers.Br.9–19; Econ.Br.15–17.

Finally, New York's dignitary-harms interest falls flat. The First Amendment protects choices to speak or remain silent even if they are "misguided," "hurtful," or "cause anguish or … grief." *303 Creative*, 2023 WL 4277208, at *8, *16 (cleaned up). When confronted with those choices, "tolerance, not coercion, is our Nation's answer." *Id.* at *16.

13

In short, whether read as banning compelled speech per se or as applying strict scrutiny, *303 Creative* shows that New York's laws fail as applied to Emilee. This underscores the district court's error in upholding New York's laws at the motion-to-dismiss stage. The district court assumed that the laws "compel[ ] [Emilee] to create speech"—i.e., photographs and blogs celebrating same-sex marriages. SA.22. Under *303 Creative*, that decides the matter in Emilee's favor; her First Amendment claims should move forward. Emilee.Reply.Br.23–24.

## VI.   Under *303 Creative*, Emilee is entitled to injunctive relief.

*303 Creative* also shows that Emilee deserves injunctive relief. Now. This Court should reject New York's call for remand because the parties had their chance to develop the record below, no one disputes a relevant fact, Emilee.Br.66, and *303 Creative* shows that compelling speech is per se invalid. What's more, the court below essentially decided the merits of Emilee's requested injunction. As New York and the County put it, that court's decision "follow[ed] a full substantive review of the merits of [Emilee's] constitutional claims." NY.Mot.2, ECF No. 39.

*303 Creative* also proves that Emilee meets the injunctive factors. She's likely to succeed on the merits of her free-speech claim. *Supra* §§ II–III. She's also suffering irreparable harm. As *303 Creative* explained, Colorado violated Smith's freedom of speech by putting her to an unconstitutional choice: speak consistent with her beliefs and risk

14

prosecution or remain silent. *303 Creative*, 2023 WL 4277208, at \*9. Colorado's law likewise prohibited Smith from explaining what messages she could and could not create. *Id.* at \*5 n.1. New York's laws give Emilee the same unjust choice and impose the same speech ban.

Just like Smith, Emilee also faces a credible threat that New York will enforce its laws against her. Both Colorado and New York actively enforce their laws, allow any aggrieved party to file a complaint, and refuse to disavow enforcement. *Compare id.* at \*5–6 *with* SA.10–18. New York's penalties are even more severe than Colorado's, with potential jail time and crippling, six-figure fines available. SA.8.

The public interest favors Emilee too. New York has no interest in unconstitutionally applying its law to her. But enjoining that application leaves New York free to enforce its law in line with the First Amendment.

The Supreme Court's decision in *303 Creative* proves that the district court erred by dismissing Emilee's free-speech and expressive-association claims. That undermined the First Amendment's promise. "The First Amendment envisions the United States as a rich and complex place where all persons are free to think and speak as they wish, not as the government demands." *303 Creative*, 2023 WL 4277208, at \*16. Emilee, Smith, the "Muslim movie director," the "atheist muralist," and the LGBT photographer benefit from this protection. *Id.* at \*9. This Court should reverse the district court's decision, reinstate Emilee's claims, and order the district court to grant her requested injunction.

Sincerely,

s/ Jonathan Scruggs
Jonathan Scruggs
ALLIANCE DEFENDING FREEDOM
15100 N. 90th St.
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@adflegal.org

*Attorney for Appellants*

## CERTIFICATE OF SERVICE

I certify that on July 14, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Jonathan Scruggs
Jonathan Scruggs
*Attorney for Appellants*

17

# APPENDIX

| New York's Laws | Colorado's Law |
|---|---|
| Place of public accommodation includes "establishments dealing with goods or services of any kind …." N.Y. Exec. Law § 292(9). *See also* N.Y. Civ. Rts. Law § 40-c (interpreted co-extensively, SA.7). | Place of public accommodation "means any place of business engaged in any sales to the public and any place offering services, facilities, privileges, advantages, or accommodations to the public, including but not limited to any business offering wholesale or retail sales to the public …" and other examples. C.R.S. § 24-34-601(1). |
| "Any person claiming to be aggrieved by an unlawful discriminatory practice may, by himself or herself or his or her attorney-at-law, make, sign and file with the division a complaint …. The … attorney general, or … the division on its own motion may, in like manner, make, sign and file such complaint." N.Y. Exec. Law § 297(1). *See also* N.Y. Civ. Rts. Law § 40-d (any "aggrieved person"). | "Any person claiming to be aggrieved by a discriminatory or unfair practice … may, by himself or herself … file with the division a verified written charge …. The commission, a commissioner, or the attorney general on its own motion may make, sign, and file a charge alleging a discriminatory or unfair practice [in certain cases]." C.R.S. § 24-34-306(1)(a)-(b). |
| "The term 'person' includes one or more individuals, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers." N.Y. Exec. Law § 292(1). | "'Person' means one or more individuals, limited liability companies, partnerships, associations, corporations, legal representatives, trustees, receivers, or the state of Colorado and all of its political subdivisions and agencies." C.R.S. § 24-34-301(15)(a). |

18

| | |
|---|---|
| "It shall be an unlawful discriminatory practice for any person, [or] … any place of public accommodation, … because of … sexual orientation, … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof." N.Y. Exec. Law § 292(2)(a); *See also* N.Y. Civ. Rts. Law § 40-c (interpreted co-extensively, SA.7). | "It is a discriminatory practice and unlawful for a person, directly or indirectly, to refuse, withhold from, or deny to an individual or a group, because of … sexual orientation … the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation …." C.R.S. § 24-34-601(2)(a). |
| "It shall be an unlawful discriminatory practice for any person, [or] … any place of public accommodation, … directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, … and privileges of any such place shall be refused, withheld from or denied to any person on account of … sexual orientation, … or that the patronage or custom thereat of any person of or purporting to be of any … sexual orientation, … is unwelcome, objectionable or not acceptable, desired or solicited.." N.Y. Exec. Law § 292(2)(a). *See also* N.Y. Civ. Rts. Law § 40-c (interpreted co-extensively, SA.7). | "It is a discriminatory practice and unlawful for a person, … directly or indirectly, to publish, circulate, issue, display, post, or mail any written, electronic, or printed communication, notice, or advertisement that indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation will be refused, withheld from, or denied an individual or that an individual's patronage or presence at a place of public accommodation is unwelcome, objectionable, unacceptable, or undesirable because of … sexual orientation …." C.R.S. § 24-34-601(2)(a). |

19

| | |
|---|---|
| Penalties include "cease and desist" orders; "extension of full, equal and unsegregated … advantages"; "compensatory damages"; "civil fines and penalties" "not to exceed fifty thousand dollars" or "not to exceed one hundred thousand dollars" depending on circumstances; "misdemeanor"; "class A misdemeanor"; and "cancelling any certificate." N.Y. Exec. Law § 297(4)(c), (e); N.Y. Exec. Law § 299; *See also* N.Y. Civ. Rts. Law § 40-d; N.Y. Exec. Law § 63(12). | Penalties include fines "not less than fifty dollars nor more than five hundred dollars per violation"; "cease and desist" orders; and other "affirmative action[s], including the posting of notices." *See* C.R.S. § 24-34-602(1)(a), § 24-34-605, § 24–34–306(9). |